IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ANITRA HEATH | : | |
| | : | |
| v. | : | |
| | : | NO-23-CV-2398 SWR |
| MARTIN O'MALLEY, | : | |
| Commissioner of Social Security | : | |
| | : | |

**O P I N I O N**

SCOTT W. REID                                                                                       DATE:  March 14, 2024
UNITED STATES MAGISTRATE JUDGE

  Anitra Heath brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB").  She has filed a Request for Review to which the Commissioner has responded.  As explained below, I conclude that her Request for Review should be denied, and judgment entered in favor of the Commissioner.

I. *Factual and Procedural Background*

  Heath was born on March 2, 1962.  Record at 236.  She completed high school.  Record at 260.  She worked in the past as a receptionist and as a claims processor.  *Id*.  On December 8, 2020, Heath filed an application for DIB, asserting disability since September 9, 2019, due to low back injury, tailbone injury, nerve damage in the left leg, left hip pain, diabetes, high blood pressure, and acid reflux.  Record at 236, 259.  She later presented evidence of cervical spine degeneration and mental distress.  Record at 924, 1286-8.

Heath's application for benefits was denied initially and upon reconsideration. Record at 104, 114. Heath then requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Record at 125.

A hearing was held in this matter on March 22, 2022. Record at 36. On April 29, 2022, however, the ALJ issued a written decision denying benefits. Record at 18. The Appeals Council denied Heath's request for review on May 15, 2023. Record at 1. Heath then filed this action.

II.     *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401. A reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*, Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we

also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record.  *Id*.  The RFC assessment reflects the most an individual can still do, despite any limitations.  SSR 96-8p.

The final two steps of the sequential evaluation then follow:

(iv)  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (v)  At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make the adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.   *The ALJ's Decision and the Claimant's Request for Review*

In her Decision, the ALJ found that Heath suffered from the severe impairments of lumbar disc disease, diabetes, residuals of a coccygeal (tailbone) contusion, osteoarthritic changes in the ankles, and obesity.  Record at 21.  She specified that Heath's hypoglycemia, gastrointestinal issues, and pneumonia were not severe.  *Id*.

The ALJ did not mention Heath's cervical spine degeneration or her claims of mental distress, but she added:

[T]he overall evidence of record supports a finding that any other condition not specifically mentioned in this decision, but that may be mentioned briefly in the record, is not considered severe.  In reviewing the record, special attention was given to the duration and frequency of medical conditions for which the claimant sought treatment.  Therefore, I find that those impairments that are not specifically mentioned reveal only a

3

slight abnormality having such minimal effect on an individual that it would not be expected to interfere with the individual's ability to work and are, therefore, non-severe.

Record at 21.

The ALJ then found that no impairment, and no combination of impairments, met or medically equaled a listed impairment. *Id*. She considered the listing regarding disorders of the spine resulting in nerve root compromise, and the one regarding spinal stenosis. Record at 21-22.

As to Heath's RFC, the ALJ wrote:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she is limited to never crawling or climbing ladders, ropes and scaffolds; to occasionally performing all other postural activities; and to no exposure to unprotected heights and occasional exposure to vibration, machinery, dusts, gases, fumes and pulmonary irritants.

Record at 23.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ determined at the fourth step of the sequential evaluation that Heath could return to her past relevant work as a receptionist, an appointment clerk, or a claims processing clerk. Record at 29. On this basis, she decided that Heath was not disabled. Record at 29-30.

In her Request for Review, Heath maintains that the ALJ erred in failing to find her cervical spine disc degeneration or her mental health limitations to be severe impairments, or to consider them as part of her RFC assessment. She also maintains that the ALJ should have ordered a consultative examination by a mental health expert. Finally, she argues that the medical evidence disproves the ALJ's finding that she could engage in light work.

IV.    *Discussion*

    A.    *Heath's Cervical Spine Degeneration and Mental Complaints*

The ALJ mentioned in her review of the evidence that Heath's "cervical x-rays on May 25, 2016, revealed multilevel spondylotic changes." Record at 24. She also observed that Heath presented to her general practitioner, Dr. Steven Schmidt, on October 9, 2018, with neck and shoulder pain following a car accident, and that she was prescribed muscle relaxants. *Id*. However – as Heath complains – she did not find Heath's cervical spine degeneration to constitute a severe impairment. Nor did she mention it again in her decision.

Similarly, the ALJ mentioned that, at an October 21, 2021, visit with Dr. Schmidt, Heath was tearful, and told him she was anxious and depressed due to her physical pain, and that her memory had diminished. Record at 28. Nevertheless, the ALJ did not find that Heath suffered from a mental impairment, and did not include mental limitations in her RFC assessment.

The closest the ALJ came to evaluating either of these impairments was in the general statement, quoted above, that conditions not specifically mentioned in the decision were not considered severe. Record at 21. Although in some circumstances, this might be considered an inadequate treatment, even of a non-severe impairment, in this case it is sufficient.

    1.    *Cervical Spinal Disease*

As above, objective medical evidence in the form of 2016 x-rays confirms that Heath had "multilevel spondylotic changes." Record at 924. Clearly, spinal degeneration does not repair itself; it could only progress in the years between 2016 and the ALJ's 2022 decision.

In some cases, the ALJ's failure to consider this impairment in assessing an RFC would be problematic. An ALJ must consider the combined effects of both severe and non-severe impairments in determining an RFC. 20 C.F.R. §404.1545(a)(2) ("We will consider all of your

5

medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404,1523, when we assess your residual functional capacity").

Here, however, the record supports the ALJ in concluding that Heath's cervical spinal degeneration caused no more than a minimal effect on her ability to work. Record at 21. This evidence includes the following:

> 1. Heath did not allege a cervical spine disorder in her application for benefits, despite enumerating seven other impairments (Record at 236);
>
> 2. Upon appealing her initial unfavorable decision, Heath answered "no" when asked on the appeal form whether she had any new conditions (Record at 294);
>
> 3. When Heath was examined by independent medical expert Patrick Frisella, D.O., on April 27, 2021, she told him about her lower back injury; bulging discs in her lumbar spine; coccyx injury; pain in her left hip; diabetes; hypertension; asthma; acid reflux; and pneumonia – she did not mention the disorder of the cervical spine or any limitation in the neck or arms which could be related to such a disorder, and Dr. Frisella did not note any relevant limitation on physical examination (Record at 1033-37);
>
> 4. As Heath herself sets forth in her Request for Review, when the ALJ asked her why she could not work, she mentioned an inability to sit and stand; poor concentration; poor sleep; obesity; and mobility issues. Request for Review at unpaginated p. 6, *quoting* Record at 49. She did not mention pain or limitation arising from the cervical spine;
>
> 5. Other than the May 25, 2016, x-ray, there is no medical note in the record reflecting treatment, including physical therapy, for pain or limitations in Heath's neck or arms, or any request by her for such treatment.

On this record, it is impossible to say that the ALJ erred in concluding that Heath's cervical spine disorder had no more than a minimal effect on her ability to work. There is no evidence to support a contrary conclusion.

Alternatively, if the ALJ erred, it can be said with great confidence that, based on the evidence of record, remand to correct the error would not result in a different outcome in this case. For this reason, any error would be harmless. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2006); *and see McGraw v. Commissioner of Soc. Sec.*, 609 Fed. App'x 113, 116 (3d Cir. May 1, 2015).

2.  *Mental Illness*

An October 20, 2021, note by Dr. Schmidt, Heath's general practitioner includes this: "Pt states she is also feeling more anxious and depressed secondary to pain and has had difficulty with her memory recently." Record at 1285. Heath also had positive (i.e., abnormal) results on depression screening, and Dr. Schmidt accordingly diagnosed her with "Major depressive disorder, single episode, mild." Record at 1288.

At her hearing, Heath told the ALJ that she had problems with concentration that impaired her ability to read, and that she had short-term memory problems which caused her to forget what she read and to forget people's names. Record at 58-9. She also testified that her quality of life was poor, saying: "I don't feel like I have a life anymore … I'm feeling I'm just existing." Record at 60.

The ALJ mentioned in her decision that Heath told Dr. Schmidt she was depressed, anxious, and feared developing dementia, although she did not mention his depression diagnosis. Record at 28. She also noted that Dr. Frisella's mental status screening of Heath was normal. Record at 27, *citing* Record at 1036. Thus, she considered Heath's claim of mental illness to some extent. However, she imposed no non-exertional limitation in Heath's RFC assessment, and she posed no hypothetical questions to the vocational expert including mental limitations. Record at 61-63.

Nevertheless, as with her cervical spinal impairment, the record evidence would preclude a finding that Heath suffered from more than minimal mental illness.  Heath did not allege a mental disorder in her application for benefits, either initially or upon reconsideration.  Record at 236, 294.  Nor did she tell consulting examiner Dr. Frisella that she had a mental impairment or describe any psychological symptomology.  Record at 1031-1049.  At Heath's hearing, her own lawyer failed to pose a hypothetical question to the vocational expert containing a mental limitation.  Record at 63-4.

Significantly, there is no evidence that Heath had even the most routine of mental health treatment, whether in the relevant period or prior to it.  She told the ALJ that she made a single appointment with a therapist but forgot to keep it.  Record at 51.  This might support Heath's claim of memory lapses, but it does not support the existence of psychological symptoms severe enough to motivate her to seek medical help.  Nor does the record include other evidence which might indicate mental instability, such as homelessness, aggressive behavior, or police involvement.

The only relevant medical evidence in the record is Dr. Frisella's mental status examination.  As the ALJ noted, it was normal:

> The claimant maintains good eye contact.  The claimant appears oriented in all spheres.  The claimant shows no evidence of hallucinations and delusions.  The claimant shows no evidence of impaired judgment or significant memory impairment.  Affect normal.  The claimant denied suicidal and homicidal ideation.

Record at 1036.

Even Dr. Schmidt, who diagnosed Heath with depression, said her condition was "mild."  Record at 1288.  He did not prescribe any medication to treat it.  Record at 1289.  He may have referred Heath for therapy, but, as of Heath's March 22, 2022, hearing six months later, she had not obtained it.

Thus, here again, if the ALJ erred in the treatment of Heath's alleged mental health issues, her error was harmless under *Rutherford*, *supra*. Clearly, remand for further consideration of the evidence relating to Heath's mental health would not result in a finding that she suffered from a psychological impairment severe enough to affect the RFC assessment.

B. *The Failure to Order Additional Mental Health Evaluation*

As a related matter, Heath argues that the ALJ erred in failing to send her for an examination by a consulting mental health expert, quoting *Plummer v. Apfel*, 186 F.3d 422, 433: "When the record contains evidence of a mental impairment, the [Commissioner] cannot determine that the claimant is not under a disability without first making every reasonable effort to ensure that a qualified psychiatrist … has completed the medical portion of the case review and any applicable residual functional capacity assessment." Request for Review at unpaginated p. 13.

Heath concedes that the Commissioner did not make any determination initially or upon reconsideration concerning her mental impairments because no claim of a mental impairment was raised before the state agencies. *Id*. She argues, however, that the ALJ "could have remanded the matter for further development, including the scheduling of a consultative examination." *Id*.

As the Commissioner points out, however, the decision whether to order a consultative examination is for the ALJ to make. 20 C.F.R. §404.1519a. The burden is on a plaintiff to establish that a consultative examination is necessary for the ALJ to make the disability determination. *Harris v. Berryhill*, Civ. A. No. 16-6171, 2017 WL 4854110 at *7 (E.D. Pa. Oct. 3, 2017), *approved and adopted* 2017 WL 4844830 (E.D. Pa. Oct. 25, 2017), *citing Thompson v. Halter*, 45 F. App'x 146, 149 (3d Cir. 2002) (An "ALJ's duty to develop the record does not

require a consultative examination unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability determination").

In some cases, the evidence of an impairment presented by a claimant is so suggestive that an ALJ can be said to have erred by failing to obtain clearer or more conclusive evidence in order to fulfil her duty to develop the record.  This, however, is not one of those cases.  As the review of the evidence set forth above makes clear, Heath came forward with only minimal evidence.

Further, Heath never asked the ALJ to order a consultative mental health examination or to help obtain any other evidence relevant to mental health.  Under these circumstances, Heath has not met her burden to establish that a consultative examination was so necessary that the ALJ erred in failing to order one.

      C.    *The Physical RFC*

Finally, Heath argues that the medical evidence of record does not support the ALJ's conclusion that she could engage in a limited range of light work.  She points to April 23 and May 21, 2019, treatment notes from Mitchell K. Freedman, D.O., at the Rothman Clinic, who limited her to four hours of work per day, and lifting no more than ten pounds from waist to chest.  Record at 463, 464-5.

The ALJ discussed the May 21, 2019, note, but wrote:  "Dr. Freedman's opinion is not persuasive because it was rendered prior to the alleged onset date of disability and does not reflect the claimant's limitations throughout the periods at issue."  Record at 28.  She also found the limitations he imposed inconsistent with his examination findings of a slow but stable gait, and full and pain-free straight leg raise and hip motion, with full strength.  *Id.*, and Record at 465.

Even the law cited by Heath reveals the weakness of her argument. She concedes that, when a conflict in the evidence exists, an ALJ may choose whom to credit, as long as she does not reject evidence for no reason or for the wrong reason. Request for Review at unnumbered page 16, *citing Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993). Here, the ALJ gave the legitimate reason that Dr. Freedman's opinions were given during a time which was not under consideration in this case. It could also be noted that Dr. Freedman's May 21 note was authored only two months after Heath's March 12, 2019, accident, in which she fell to the floor, injuring her coccyx. Record at 557. Naturally, Heath would be particularly limited at that time.

And clearly, the ALJ was presented with a true conflict in the evidence, within the meaning of *Mason*. Consulting examiner Dr. Frisella found Heath's physical examination to be largely normal. Record at 1035-6. He determined that she could sit, stand, or walk without limitation, and could lift 20 pounds frequently, and up to 100 pounds occasionally. Record at 1039-40. As with Dr. Freedman, however, the ALJ declined to adopt Dr. Frisella's RFC findings, writing that they were "not consistent with the overall evidence that showed the claimant has a number of different impairments" warranting greater limitations. Record at 28.

The ALJ's RFC assessment was also more limited than that arrived at by both reviewing agency physicians, Esther Kim, M.D., and Nghia Van Tran, M.D., who found – like the ALJ – that Heath could engage in a limited range of light work, but did not order the limitations on pulling or pushing with the lower extremities which the ALJ imposed. Record at 29, 74-79, 92-97. However, the ALJ did find Dr. Kim and Dr. Tran's opinions "partially persuasive." Record at 29.

Thus, the ALJ fulfilled her duty under *Mason v. Shalala* to explain which medical evidence she accepted and which she rejected, and why. Heath has not shown any error with respect to the ALJ's treatment of Dr. Freedman's evidence.

V.      *Conclusion*

In accordance with the above discussion, I conclude that Heath's Request for Review in this case should be denied, and judgment entered in favor of the Commissioner.

BY THE COURT:

*/s/ Scott W. Reid*
_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE